LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
BRIAN A. PROCEL (State Bar No. 218657)
bprocel@millerbarondess.com
CHRISTOPHER D. BEATTY (State Bar No. 266466)
cbeatty@millerbarondess.com
ANDREW L. SCHRADER (State Bar No. 307964)
aschrader@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

*Attorneys for Plaintiff*
***MICHAEL GOLDBERG, AS TRUSTEE OF
THE WOODBRIDGE LIQUIDATION TRUST***

Heather L. Rosing, Bar No. 183986
Earll M. Pott, Bar No. 156516
Nima D. Shull, Bar No. 323300
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
hrosing@klinedinstlaw.com
epott@klinedinstlaw.com
nshull@klinedinstlaw.com

*Attorneys for Defendants*
***ROME MCGUIGAN, P.C. and BRIAN COURTNEY***

ANDREW A. SERVAIS, State Bar No. 239891
aservais@wingertlaw.com
IAN R. FRIEDMAN, State Bar No. 292390
ifriedman@wingertlaw.com
MARK M. IMADA, State Bar No. 322113
mimada@wingertlaw.com
WINGERT GREBING BRUBAKER & JUSKIE LLP
One America Plaza, Suite 1200
600 West Broadway
San Diego, CA 92101
(619) 232-8151; Fax (619) 232-4665

*Attorneys for Defendants* **BAILEY CAVALIERI LLC
and THOMAS E. GEYER**

(*Caption Continued on Next Page*)

1

THE PARTIES' JOINT RULE 26(f) REPORT AND DISCOVERY PLAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
# FIRST STREET UNITED STATES COURTHOUSE

| | |
|---|---|
| MICHAEL GOLDBERG AS TRUSTEE OF THE WOODBRIDGE LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ROME McGUIGAN, P.C.; BRIAN COURTNEY, an individual; BAILEY CAVALIERI LLC; THOMAS GEYER, an individual; IVAN ACEVEDO, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO. 2:20-cv-09958 JFW (SKx)**<br><br>**THE PARTIES' JOINT RULE 26(f) REPORT AND DISCOVERY PLAN**<br><br>**Scheduling Conference:**<br>Date:   February 22, 2021<br>Time:   1:15 PM<br>Judge:  The Hon. John F. Walter<br>Ctrm.:  7A (7th Floor)<br><br>The Hon. John F. Walter<br>*United States District Judge*<br>The Hon. Steve Kim<br>*United States Magistrate Judge* |

**TO THIS HONORABLE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that the parties hereby file and submit their Joint Rule 26(f) Report and Joint Discovery Plan pursuant to Fed. R. Civ. P. 26.

**A.   STATEMENT OF THE CASE**

Plaintiff's Response:

Plaintiff's Response: This case arises out of the $1.3 billion Ponzi scheme orchestrated by Robert Shapiro through his web of limited liability companies, including Woodbridge Group of Companies, LLC and certain of its affiliates ("Woodbridge"). Woodbridge marketed promissory notes and other offerings as low-risk, high yield investments backed by high-interest real-estate loans to third-party commercial borrowers. To provide additional protection, a substantial percentage of investors were purportedly provided a security interest in real estate owned by an independent third-party borrower.

In fact, there were almost no loans to independent borrowers. Woodbridge instead made sham loans to insider entities that were secretly controlled by Shapiro. Woodbridge had minimal revenue other than money raised from new investors. Woodbridge used money raised from new investors to pay false returns to earlier investors. When there was no longer enough new investor money to pay the false returns, the scheme collapsed. The Woodbridge entities filed for bankruptcy on several dates starting in December 2017. Subsequently, Shapiro was indicted, pleaded guilty to fraud, and was sentenced to 25 years in federal prison.

The Woodbridge Liquidation Trust was created under a bankruptcy court approved plan effectuated on February 15, 2019 to assist investors in recovering their catastrophic losses. Thousands of investors have assigned any claims they might have against individuals who assisted Woodbridge to the Trust.

Defendant Acevedo was Woodbridge's head of sales and responsible for supervising Woodbridge's sales staff and ensuring that Woodbridge met its

1  fundraising goals.  Woodbridge primary method for selling its loan product called
2  First Position Commercial Mortgages ("FPCMs") was through financial planners,
3  who were paid commissions for recommending the FPCMs to their clients.  One
4  issue that arose was that financial planners, who were generally not licensed
5  securities brokers, were concerned that the FPCMs were securities and that selling
6  them would put the financial planners in legal jeopardy.  Acevedo came up with the
7  idea that Woodbridge could commission a legal opinion letter from an outside law
8  firm that would opine that the FPCMs were not securities.  This was expected to
9  address the financial planners' concerns.  After the opinion letters were drafted, he
10 and his sales team distributed them to brokers, some of whom also distributed them
11 to their clients.  In 2019, Acevedo was indicted for wire fraud.  His criminal case
12 remains pending.  The Trustee brings one claim against him under Rule 10b-5 for
13 distributing the false statements in the memos drafted by Rome and Bailey.
14 Acevedo has not responded to the complaint and the Trustee intends to seek a
15 default judgment against him.
16      Defendant Rome is the first law firm that drafted an opinion memo stating
17 that the FPCMs were not regulated as securities.  Woodbridge's general counsel
18 reached out to several law firms before hiring Rome to draft an opinion memo.
19 Rome drafted a memo opining that the FPCMs were not securities, and it also
20 revised Woodbridge's FPCM offering documents.  The Trustee brings one claim
21 against Rome under Rule 10b-5 for making false and misleading statements in the
22 memo.  He also brings various state law claims against Rome relating to false
23 statements in the memo and the offering documents that Rome revised.
24      Defendant Bailey is another law firm that drafted an opinion memo stating
25 that the FPCMs were not securities.  Bailey's memo recounted false facts about how
26 Woodbridge was structured.  Bailey was aware that these facts were false because it
27 received documents from Woodbridge where the supposed third-party borrower had
28 the same address as Woodbridge's office in Sherman Oaks.  Bailey's memo was

used by Woodbridge in a similar fashion as the Rome memo. The Trustee brings one claim against Bailey under Rule 10b-5 and various state-law claims for making false and misleading statements in the memo

Rome's Response:

Rome denies all claims and specifically denies knowingly, recklessly, or negligently making any false or misleading claims in the memo it prepared or in the loan documents it was asked to review and revise.

Bailey's Response:

Bailey Cavalieri LLC is an Ohio limited liability law company and Defendant Thomas Geyer is an attorney only licensed to practice in the state of Ohio. (collectively "BC"). BC became involved with Woodbridge after the Ohio Division of Securities served a subpoena duces tecum ad testificandum on Jeff Ahern, a Financial Advisor in Ohio who sold FPCM Notes in Ohio on behalf of Woodbridge.

BC's services performed included: communicating with representatives of Woodbridge, whom Geyer understood were located in Connecticut; communicating with Ahern in Ohio; evaluating Ohio securities law issues; reviewing documents provided to Geyer by Ahern to determine documents responsive to the Ohio Division subpoena; communicating with and providing responsive documents to the Ohio Division; advocating to the Division on Ahern's behalf, including the submission of advocacy correspondence; representing Ahern before the Ohio Division, including representation at an investigative hearing held in October 2015; and sending invoices to a Woodbridge employee in Connecticut.

BC prepared the advocacy correspondence addressed to the Ohio Division of Securities to argue the position that FPCM notes were not securities under Ohio Law. Upon request from David Golden of Woodbridge, BC provided a generic version of the advocacy correspondence, referred to as the "Bailey Opinion Memo[randum]" by Plaintiff, to be kept by Woodbridge "for our file."

BC never authorized or anticipated Woodbridge would disseminate the

generic version of Geyer's advocacy letter to either prospective investors or financial professionals. Unbeknownst to BC, Woodbridge was a Ponzi scheme that had unilaterally disseminated BC's advocacy correspondence.

Plaintiff alleges BC violated Rule 10b-5 and other state law claims arising from a duty supposedly owed by BC to individual investors. BC never made any statement or representation to the investors who assigned their claims to Plaintiff. BC never authorized or permitted statements to be made on their behalf. BC was wholly unaware Woodbridge was sending out versions of the advocacy correspondence for any reason, including as a sales technique.

**B. DISCOVERY PLAN**

**1. What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made**

The parties do not believe that any changes need to be made in the timing, form, or requirement for disclosures under Rule 26(a). The parties will make initial disclosures by February 22, 2021.

**2. The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues**

Plaintiff's Response: The Trustee intends to take document discovery and interrogatories from Rome and Bailey regarding the events recounted in the complaint. The Trustee is in possession of a substantial amount of documents that previously belonged to Woodbridge, as well as documents related to the trust members who assigned the claims which are the basis of this suit. The Trustee will make those documents available to the defendants.

Rome's Response: Rome anticipates taking written discovery and oral depositions on topics related to events described in the complaint. Assuming no stay of the proceedings, no undue delays related to the present pandemic, and a

6
THE PARTIES' JOINT RULE 26(f) REPORT AND DISCOVERY PLAN

prompt production of documents from the Trustee, Rome anticipates discovery can be completed in approximately one year.

<u>Bailey's Response</u>: Bailey anticipates taking written discovery and oral depositions on topics related to events described in the complaint.  Assuming no stay of the proceedings, no undue delays related to the present pandemic, and a prompt production of documents from the Trustee, Rome anticipates discovery can be completed in approximately one year.

**3. Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced**

The parties do not have any current issues regarding the disclosure, discovery, or preservation of electronically stored information.

**4. Any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502**

<u>Plaintiff's Response</u>: The Trustee is the successor of the Woodbridge entities, and therefore the holder of any attorney-client privilege that may have existed between Woodbridge and the defendants.  Given that, the Trustee does not foresee any issues regarding privilege at this time.  The Trustee does not intend to seek a protective order for the documents in his possession, but would agree on a protective order should defendants request one.  That order could include a procedure to assert claims of privilege or protection after materials have been produced.

<u>Rome's Response</u>: Rome does not anticipate any issues with regard to assertions of privilege or other claims of protection of trial-preparation materials.

<u>Bailey's Response</u>: Bailey does not anticipate any issues with regard to assertions of privilege or other claims of protection of trial-preparation materials.

5. **What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed**

Plaintiff's Response: The Trustee does not believe that any changes need to be made in the limitations on discovery imposed by the local or federal rules.

Rome's Response:

Because of the substantial number of assignors of claims, Rome believes the limiting of depositions to ten, as set forth in Rule 26(b)(2) would be substantially unjust. Rome proposes the Parties meet and confer regarding an expanded number of depositions following initial disclosures.

Bailey's Response: Based on the number of assignor claims, the arguments made in the Rule 12b6 pleadings regarding claimed "derivative liability" adding numerous Woodbridge brokers as witnesses, the fact that criminal proceedings against several key Woodbridge actors have not been concluded, Baily does not believe 10 depositions is appropriate and also proposes the Parties meet and confer regarding an expanded number of depositions following initial disclosures.

6. **The complexity of the case, and whether all or part of the procedures of the Manual For Complex Litigation (current edition) should be utilized**

Plaintiff's Response: The Trustee's position is that the complexity of this case merits utilizing the procedures of the Manual For Complex Litigation.

Rome's Response:

Rome also believes the case is complex and agrees generally to the use of procedures described in the Manual for Complex Litigation.

Bailey's Response: Bailey agrees to use of procedures described in the Manual for Complex Litigation.

7. **Motion Schedule. The dispositive or partially dispositive motions which are likely to be made, and a cutoff date by which all such**

THE PARTIES' JOINT RULE 26(f) REPORT AND DISCOVERY PLAN

**motions shall be made**

Defendants anticipate filing motions for summary judgment and adjudication. Because of the substantial number of claims, large volume of anticipated written records, and expanded number of depositions likely required, Rome proposes a motion cutoff date fifteen months from the commencement of discovery.

**8. Selection of one of the three ADR Procedures specified in L.R. 16-15.4 as best suited to the circumstances of the case, and when the ADR session should occur**

<u>Plaintiff's Response</u>: The Trustee believes that ADR Procedure No. 3, private mediation, is best suited to the circumstances of this case. Prior to filing this lawsuit, the Trustee and Rome engaged in a mediation session. The Trustee believes that mediation should next occur following the resolution of Rome and Bailey's pleadings challenges.

<u>Rome's Response</u>:

Rome is amenable to a renewed effort at private mediation.

<u>Bailey's Response</u>:

Bailey is amenable to private mediation.

**9. A preliminary estimate of the time required for trial**

<u>Plaintiff's Response</u>: Because of the large number of assigned claims that the Trustee is asserting, it is likely not feasible to try all of the assigned claims in a single trial. This makes it difficult to estimate the amount of time required for trial. The Trustee will propose that the Court utilize procedures from the Manual for Complex Litigation for mass tort claims to conduct one or more trials in this matter. Counsel estimates that a trial considering a representative sample of assigned claims could be conducted in 15 days.

<u>Rome's Response</u>:

Rome anticipates it will be able to present its defense in 7 days. The length of

trial thus is largely dependent on the number of assigned claims Plaintiff seeks to try. Rome believes proof of reliance and timeliness of the claims may require testimony from any claim the Trustee seeks to vindicate, but will meet and confer with Plaintiff regarding the size and scope of the trial. Rome reserves its right to object to multiple trials.

Bailey's Response:

Bailey believes it will be able to present its defense in 7-10 days, but believes, this estimate can be altered significantly based on the number of assignor claims, the arguments made in the Rule 12b6 pleadings regarding claimed "derivative liability" adding numerous Woodbridge brokers as witnesses and the fact that criminal proceedings against several key Woodbridge actors have not been concluded.

**10. The likelihood of appearance of additional parties**

The parties do not think it is likely that additional parties will appear.

**11. The proposed timing of disclosures under F.R.Civ.P. 26(a)(2)**

The parties propose that expert disclosures occur at least 120 days before trial and that rebuttal expert disclosures occur at least 60 days before trial.

DATED: February 8, 2021          MILLER BARONDESS, LLP

By: ___/s/ Louis R. Miller___
 LOUIS R. MILLER
 **Attorneys for Plaintiff
 MICHAEL GOLDBERG AS
 TRUSTEE OF THE WOODBRIDGE
 LIQUIDATION TRUST**

DATED: February 8, 2021        KLINEDINST PC

                               By:      /s/ Earll M. Pott
                                   Earll M. Pott
                                   **Attorneys for Defendants**
                                   **ROME MCGUIGAN, P.C. and**
                                   **BRIAN COURTNEY**

DATED: February 8, 2021        WINGERT GREBING
                               BRUBAKER & JUSKIE LLP

                               By:      /s/Andrew A. Servais
                                   Andrew A. Servais
                                   **Attorneys for Defendants**
                                   **BAILEY CAVALIERI LLC and**
                                   **THOMAS E. GEYER**